# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 03-CR-0723 (JFB) (ETB)

_____

UNITED STATES OF AMERICA

VERSUS

DOV SHELLEF,

Defendant.

_____

**MEMORANDUM AND ORDER**
January 14, 2011

_____

JOSEPH F. BIANCO, District Judge:

On July 28, 2005, defendant Dov Shellef (hereinafter "defendant" or "Shellef") was convicted following a jury trial on all counts of an 86-count indictment, alleging: conspiracy to defraud the government, 18 U.S.C. § 371; filing a false tax return, 26 U.S.C. § 7206(1); wire fraud, 18 U.S.C. § 1343; and money laundering, 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(A)(ii), (a)(1)(B)(i). On March 22, 2006, the Honorable Joanna Seybert sentenced Shellef principally to seventy months' imprisonment to be followed by three years' supervised release. On March 4, 2008, the Second Circuit issued a mandate, vacating the judgment of conviction and remanding for a new trial. On March 21, 2008, the case was re-assigned to the Honorable Thomas C. Platt. Shellef subsequently filed a writ of mandamus with the Second Circuit in connection with the denial of his counsel's motion to withdraw as counsel and substitute new counsel for

purposes of the re-trial. In connection with that appeal, the parties agreed that substitution of counsel should be permitted. On June 2, 2009, the Second Circuit issued a mandate which granted the mandamus to the extent it sought re-assignment to a new district judge and denied the petition in all other respects. On June 17, 2009, the case was re-assigned to the undersigned.

On September 3, 2009, prior to the re-trial, Shellef moved to dismiss the indictment for alleged violation of the Speedy Trial Act while the case was assigned to Judge Platt.[1] The government opposed the motion. This was a renewed motion because Judge Platt had rejected Shellef's Speedy Trial motions before the re-assignment. On October 23, 2009, the defendant filed his reply. On November 19,

_____

[1] Assuming the Speedy Trial clock had not run by the time of re-assignment, there was no claim of a Speedy Trial violation after the re-assignment.

2009, after reviewing the written submissions and hearing argument, the Court denied the Speedy Trial motion and provided the basis for its ruling orally on the record. However, the Court provides a more extended analysis of its decision in this Memorandum and Order.[2] The analysis herein not only addresses the arguments made in defendant's motion, but also the arguments regarding the Speedy Trial motion contained in his recent filing for bail pending appeal. Therefore, for the reasons set forth below and orally on the record in Court, the defendant's Speedy Trial motion is denied.[3]

## I. BACKGROUND[4]

Defendant was initially charged in a 91-count indictment on June 24, 2003. Following a jury trial in June-July 2005 before the Honorable Joanna Seybert, United States District Judge, defendant was convicted, along with co-defendant William Rubenstein, of all counts. Both Shellef and Rubenstein appealed their convictions. The Second Circuit held that certain tax charges against Shellef were improperly joined with the other charges against both defendants under Rule 8 of the Federal Rules of Criminal Procedure. *See United States v. Shellef*, 507 F.3d 82, 88 (2d Cir. 2007). The Second Circuit also held that the joinder of Shellef and Rubenstein as defendants was improper. *See id.*[5]

On March 4, 2008, the Second Circuit issued a mandate remanding the case for re-trial. (Docket No. 255.) On March 21, 2008, the case was re-assigned by the Honorable Joanna Seybert to the Honorable Thomas C. Platt. (Docket No. 256.) On March 26, 2008, Judge Platt issued a notice of hearing for a scheduling conference to be held on April 10, 2008. During this 37-day period, both defendants submitted letters requesting permission to travel outside their bail limitations. In particular, on March 28, 2008, Shellef submitted his request for bail

---

[2] On January 27, 2010, after a re-trial, the jury returned a guilty verdict on all counts. On August 15, 2010, the Court granted the defendant's Rule 29 motion for judgment of acquittal on certain counts (Counts 46-50, 52-63, 65-68, 70-75, and 77-82), and denied the motion in all other respects.

[3] The Court notes that, in denying the motion on an alternative ground under 18 U.S.C. § 3161(e) not relied upon by Judge Platt in his earlier denials, the Court does not disturb the grounds identified by Judge Platt in his July 24, 2008 Memorandum and Order—namely, that he made an "ends of justice" exclusion on April 10, 2008 based upon, among other things, that both sides agreed the case was complex and the attorneys requested a date in January 2009 to commence the re-trials. Judge Platt's determination stands. However, in denying the renewed motion to dismiss before the undersigned (which is essentially a motion for reconsideration), the Court provides its alternative grounds for the denial of the motion.

[4] A detailed recitation of the evidence, as adduced at trial, is contained in the Court's Memorandum and Order denying defendant's post-trial motions. The background section in this Memorandum and Order simply summarizes the procedural history relevant to the Speedy Trial motion.

[5] Although not necessary to decide the appeal, the Second Circuit also provided guidance for the district court on re-trial with respect to some of the issues in this case. *Shellef*, 507 F.3d at 88, 103-10.

modification. (Docket No. 258.) On April 1, 2008, the court issued a Memorandum and Order in which the request was granted in part and denied in part. (Docket No. 260.)

The scheduling conference was held on April 10, 2008. At the conference, Judge Platt instructed the government that, in light of the Second Circuit's finding of improper joinder, the government should obtain superseding indictments in the Grand Jury that separated the counts in a manner consistent with the mandate of the Second Circuit. (4/10/08 Tr. at 3-8.) Although the government believed that re-indictment was unnecessary, defense counsel agreed with Judge Platt. (*Id.* at 9-10.) The government requested an opportunity to brief the issue. (*Id.* at 10-11.) Government counsel also informed the court that the parties had discussed a re-trial date in early 2009. (*Id.* at 14.) Judge Platt proceeded to discuss the potential Speedy Trial Act implications of proceeding in this manner. In response, government counsel stated, "I think initially, your Honor, this case was declared a complex matter." (*Id.* at 15.) The Court responded, "I think we can rely on Judge Sackett [sic] to back us up on that, but as long as the both sides agree." (*Id.*) The Court then inquired as to defense counsel's opinion on the issue of complexity. Shellef's counsel stated, "Maybe the only thing we'll agree on, your Honor, I think is that. It is a complex case." (*Id.* at 16-17.) Government counsel also advised the court that he did not anticipate an open-ended extension; rather, he "would like to agree with counsel to a date certain, provided it fits with the court's calendar, and just hold to that date." (*Id.* at 17.) The court responded, "We'll do the best we can." (*Id.*) The court instructed the government to notify the court when superseding indictments were returned and to schedule arraignments of the defendants on the new indictments. (*Id.* at 19.)

On May 19, 2008, the Government filed a letter motion with the Court seeking a trial date without having to re-indict the case. (Docket No. 265.) In particular, the government argued in its letter motion that, as a matter of law, the government need not re-present the case to the Grand Jury, but rather could proceed on the original Indictment so long as the re-trials were consistent with the Second Circuit's mandate. Based on its analysis, the government stated the following: "[T]he United States is prepared to proceed to trial on the counts set forth in the original indictment in this matter, as modified consistent with the decision of the Court of Appeals. Therefore, the United States respectfully requests that the Court set three new trial dates as requested herein with associated scheduling orders." (*Id.* at 4.) Defendant Shellef did not respond to this letter motion and, thus, gave no indication that he was abandoning his position at the April 10 conference that the case had to be re-indicted before re-trial. On May 27, 2008, the court requested that the government submit redacted copies of the original Indictment to demonstrate how the re-trials could proceed in a manner that was consistent with the Second Circuit's decision. (Docket No. 266.)

On June 3, 2008, while the government's letter motion requesting new trial dates was still pending and before the government responded to the court's May 27 request, defendant Shellef filed a motion to dismiss the Indictment for violation of the Speedy Trial Act. (Docket Nos. 267-69.) On June 13, 2008, the government opposed Shellef's motion on the following grounds: (1) the parties had agreed that the case was complex and, thus, not subject to the seventy-day limitation; and (2) even if the case were

not designated as complex, the seventy days had not expired. (Docket No. 271.) On June 18, 2008, Shellef submitted his reply to the government's opposition. (Docket No. 273.) On July 22, 2008, in response to the court's May 27 request, the government filed a letter with the court and attached redacted indictments to demonstrate how the various counts in the pending Indictment should be severed in order for the re-trials to comply with the Second Circuit's decision. (Docket No. 275.) In that letter, the government reiterated that it was prepared to proceed to trial, and requested that the court set new trial dates and scheduling orders. (*Id.* at 2.) Defendant Shellef never responded to that letter.

On July 24, 2008, Judge Platt issued a nine-page Memorandum and Order denying the defendant's motion to dismiss the Indictment for violation of the Speedy Trial Act. (Docket No. 276.) In the Memorandum and Order, the court explained that it had determined that an "ends of justice" continuance was necessary pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(ii), due to the complexity of the case. (*Id*. at 5-8.) More specifically, the court explained: "While it is true that the Court did not on April 10, 2008 specifically state that it was excluding time based on the fact that this is a 'complex' case, it seemed unnecessary given that the attorneys for both parties, during a discussion on the record concerning excludable time pursuant to the Speedy Trial Act, agreed that this case was complex. Additionally, it is also true that at the time of such agreement, all of the attorneys requested a date in January 2009 to commence the retrials of these defendants. Further, it is true that regardless of the agreement among the parties on this issue, the Court (between Judge Joanna Seybert and the undersigned) was fully aware that this case

was 'complex' given that it took four weeks to try the first time and was reversed and remanded for misjoinder on appeal because of its very complexity." (*Id.* at 7-8.)

On October 29, 2008, the government filed a letter motion to the court noting that all of the pending matters had been resolved, and stating that the government stood ready to proceed to trial at the court's convenience. (Docket No. 281.) Accordingly, the government requested that the court schedule a status conference to set dates for trial. (*Id.* at 1.) Defendant Shellef did not respond to the government's letter motion. On November 3, 2008, the court issued a notice of hearing scheduling a status conference for November 6, 2008. On November 4, 2008, defendant Shellef moved the court to exonerate his bail and set aside all conditions of his pretrial release. (Docket No. 283.) On November 5, 2008, the government opposed that motion. (Docket No. 284.)

On November 6, 2008, the parties appeared before the court for a status conference. At the conference, defendant Shellef's counsel again raised his argument that the Speedy Trial time had expired, and Judge Platt rejected that argument. (11/6/08 Tr. at 5-14.) Judge Platt also determined that the re-trials could proceed before January 2009, and then scheduled trial for November 24, 2008. (*Id*. at 2, 16.) Pursuant to the government's request, the court scheduled trial against co-defendant Rubenstein first and notified defendant Shellef that, in the event co-defendant Rubenstein reached a plea agreement, Shellef's trial would proceed on November 24, 2008. (*Id.* at 25.)

On November 17, 2008, both defendant and co-defendant Rubenstein moved the court to adjourn the November 24, 2008 trial date.

(Docket Nos. 285 and 286.) On November 18, 2008, the court granted both motions and scheduled January 20, 2009 as the trial date for co-defendant Rubenstein, and scheduled February 17, 2009 as the trial date for defendant Shellef. (Docket No. 290.) On December 15, 2008, the court issued an order denying defendant Shellef's motion to exonerate bail. (Docket No. 291.) On January 5, 2009, Shellef's counsel, Stuart Abrams, Esq. ("Mr. Abrams"), moved the court to withdraw as counsel for defendant Shellef. (Docket Nos. 295-96.) On January 6, 2009, the court issued a notice of hearing which scheduled a hearing on the motion for January 13, 2009. During that hearing, defense counsel stated that he would be unable to represent defendant at the scheduled trial date unless the court released $250,000 of defendant Shellef's bail to pay defense counsel's fees. The government agreed that the court should grant defense counsel's request, and the court subsequently did so. (Docket Nos. 297-98.) Based on that agreement, Mr. Abrams agreed to stay in the case and the parties agreed to proceed to trial against defendant Shellef on February 17, 2009.

On February 3, 2009, the government moved the court *in limine* to admit the testimony of Stacey St. Pierre pursuant to Fed. R. Evid. 804(b)(1). (Docket No. 301.) Defendant did not respond to that motion. On February 5, 2009, Henry Mazurek, Esq. ("Mr. Mazurek") filed a letter motion requesting that he be substituted as defendant Shellef's counsel due to a conflict between the defendant and Mr. Abrams. (Docket No. 302.) On February 9, 2009, the government requested that the court schedule a hearing to determine the nature of any conflict. (Docket No. 303.) On February 11, 2009, the court held a telephone conference to address Mr.

Mazurek's motion to substitute counsel. During that teleconference, Mr. Abrams renewed his motion to withdraw as counsel. (Docket No. 310.) The court denied both motions. The government also informed the court that co-defendant Rubenstein intended to plead guilty pursuant to a plea agreement. The court stated that both Rubenstein's guilty plea hearing and jury selection in defendant Shellef's trial would occur on February 17, 2009. (*Id.*) On February 13, 2009, Mr. Abrams again moved the court to allow him to withdraw as defendant's counsel and adjourn the trial date. (Docket Nos. 312-13.) On February 17, 2009, the court issued a written order denying Mr. Abrams' renewed motion and granting defendant Shellef a 24-hour stay of jury selection in order to seek an immediate appeal. (Docket Nos. 314, 316, and 317.) On that same day, the court took co-defendant Rubenstein's guilty plea. (Docket Nos 315, 318.)

Defendant's appeal to the Second Circuit was denied with instructions and, on March 18, 2009, the court scheduled a hearing to determine the irreconcilable differences between defendant Shellef and Mr. Abrams to occur on March 23, 2009. (Docket No. 324.) On March 23, 2009, the court provided defendant with an opportunity to be heard on the subject of irreconcilable differences between himself and Mr. Abrams. (Docket No. 326.) Following that hearing, the court scheduled jury selection to commence the following day. (*Id.*) On March 24, 2009, the court provided defendant with another opportunity to discuss his irreconcilable differences with Mr. Abrams. (Docket No. 327.) After hearing argument from both the defendant and Mr. Abrams, the court denied the motion and instructed that it was ready to pick a jury and proceed to trial. (*Id.*) At that time, defendant made an oral motion to dismiss

the Indictment for violation of the Speedy Trial Act. The court heard argument from both parties and denied the motion. (*Id.*) During the lunch hour, defendant sought and obtained a stay from the Second Circuit pending interlocutory appeal. (Docket No. 327.) On March 27, 2009, the court issued an Order summarizing the activity in the case from the Second Circuit's mandate in March 2008, through March 24, 2009. (Docket No. 325.)

On June 8, 2009, the Second Circuit granted defendant's request that a new judge be assigned, but denied the appeal on all other grounds. (Docket No. 332.) On June 17, 2009, the case was re-assigned to the undersigned. On June 24, 2009, the Court held a status conference, set a motions calendar, and set the case for trial on December 7, 2009. (Docket No. 337.) While preserving his prior Speedy Trial objections made prior to re-assignment of the case, defendant Shellef agreed to an "ends of justice" exclusion of time under the Speedy Trial Act from June 24, 2009 to December 7, 2009 to allow new counsel time to file motions and prepare for trial, and the Court made the appropriate contemporaneous finding on the record under the Speedy Trial Act. (Docket No. 335.) On September 2 and 3, 2009, defendant filed a motion requesting, among other things, that the Court dismiss the Indictment pursuant to the Speedy Trial Act on the grounds that the time under the Act had expired prior to re-assignment to the undersigned. (Docket Nos. 346-48.) On October 5, 2009, the government filed its opposition. (Docket No. 351.) On October 23, 2009, defendant Shellef filed a reply. (Docket No. 355.) On November 12, 2009, the Court heard oral argument. On November 19, 2009, the Court denied the motion for the reasons set forth on the record, which are

being supplemented by this Memorandum and Order.

## II. DISCUSSION

Defendant Shellef argues that the Speedy Trial Act was violated because the time under the Act expired between the issuance of the Second Circuit's mandate on March 4, 2008, requiring re-trial, and November 4, 2008.[6] (Def.'s Mem. of Law at 14.)

As a threshold matter, the government argues that Judge Platt's denial of Shellef's Speedy Trial motions is "law of the case" that should not be re-visited by this Court because the motion is completely duplicative of the motions made before Judge Platt. It is axiomatic that the "law of the case" doctrine is a discretionary one. However, the Second Circuit has explained that "[t]he law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34,

_____

[6] In other portions of the motion, defendant Shellef refers to November 6, 2008 (rather than November 4, 2008) as the end date of his Speedy Trial claim. However, even if November 6, 2008 is utilized as the end date, there are no additional non-excludable days because defendant Shellef filed a bail motion on November 4, 2008, which was still pending as of November 6, 2008. Thus, those additional days are automatically excludable under 18 U.S.C. § 3161(h)(1)(D) (formerly codified at Section 3161(h)(1)(F)). Shellef makes no claim of a Speedy Trial violation for any period after this time frame.

39 (2d Cir. 2000)). Under that discretionary standard, there is no basis to disturb Judge Platt's decision denying the defendant's Speedy Trial claim. In any event, in an abundance of caution, the Court has reviewed defendant's Speedy Trial motion *de novo* and, for the reasons set forth in detail on the record on November 19, 2009 and below, again concludes (on alternative grounds) that defendant's Speedy Trial motion should be denied.

## A. The Speedy Trial Clock Has Been Extended in this Case under Section 3161(e) to 180 Days

The Speedy Trial Act is "designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in ensuring prompt criminal proceedings." *United States v. Hill*, 197 F.3d 436, 440 (10th Cir. 1999). Pursuant to those objectives, the Act mandates that a defendant's trial begin within seventy days from the filing of the information or indictment against the defendant, or from the date of the defendant's initial appearance in court, whichever is later. *See* 18 U.S.C. § 3161(c)(1). However, with respect to a re-trial after an appeal, the Act allows the district court, under certain circumstances, to extend the seventy-day period to one hundred and eighty days from the date the action requiring the re-trial becomes final (which usually is the mandate from the appellate court). *See* 18 U.S.C. § 3161(e). In particular, the Act provides, in relevant part, as follows:

If the defendant is to be tried again following an appeal . . . the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical.

18 U.S.C. § 3161(e).

Whether the seventy-day or 180-day clock is utilized, the Act contemplates periods of excludable delay and, thus, provides enumerated categories of delay that are excluded from the calculation of this period. Some of the exclusions are automatic, without any judicial findings. *See* 18 U.S.C. §§ 3161(h)(1)-(h)(6). For instance, the time under the Act is automatically excluded for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F) (re-codified at Section 3161(h)(1)(D));[7] *Henderson v. United States*, 476 U.S. 321, 332 (1986) (holding that tolling under Section 3161(h)(1)(F) is automatic). Other exclusions are only triggered by judicial actions or orders. For example, the time under the Act can be excluded by the Court *sua sponte* or at the request of a party if a continuance serves the "ends of justice." *See* 18 U.S.C. § 3161(h)(8)(A) (re-codified at Section 3161(h)(7)(A)). However, the Act explicitly states in Section 3161(h)(8)(A) that an "ends of justice" exclusion under this subsection is valid

---

[7] Certain subsections in Section 3161(h)(1), while containing the same language, have been re-codified since 2008 under different subsections. However, the Court will refer to these subsections in this Memorandum and Order by the subsection designations that existed at the time of the relevant events in 2008.

only if the district court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Moreover, given the language of Section 3161(h)(8)(A), it is axiomatic that retrospective exclusions under Section 3161(h)(8)(A) are not permissible. *See United States v. Kelly*, 45 F.3d 45, 47 (2d Cir. 1995) ("[T]he district court's *nunc pro tunc* 'ends of justice' finding was ineffective to toll the speedy trial clock."). *But see United States v. Correa*, 182 F. Supp. 2d 326, 327-329 (S.D.N.Y. 2001) (Lynch, J.) (holding that the public emergency created in the Southern District of New York by the September 11 attacks warranted a retroactive "ends of justice" exclusion under the Speedy Trial Act). Similarly, with respect to "ends of justice" exclusions, "[a] prospective waiver of all rights under the Speedy Trial Act is not acceptable, nor is a defendant's acquiescence to a continuance sufficient compliance with the Act for an ends-of-justice exclusion in the absence of specific findings." *United States v. Culbertson*, 598 F.3d 40, 47 (2d Cir. 2010) (citing *Zedner v. United States*, 547 U.S. 489, 501-03 (2006)). Finally, the Supreme Court has held that if the district court has not met the requirements of an "ends of justice" exclusion, the harmless error rule cannot be applied. *See Zedner*, 547 U.S. at 508-09; *accord Culbertson*, 598 F.3d at 47-48.

On March 4, 2008, the mandate from the Second Circuit remanding this matter for re-trial was issued. The mandate thus triggered the application of Section 3161(e), which would require the re-trial to take place within seventy days of March 4, 2008, unless there was an exclusion of time or unless the seventy-day clock is extended under Section 3161(e) for a period of up to 180 days. At the initial conference after the remand on April 10, 2008, although Judge Platt did not reference Section 3161(e) or make a specific finding under that section, it is abundantly clear from the transcript (as well as the docket entry) that both the Court and the parties had concluded that trial within seventy days was impractical for several reasons. In fact, Judge Platt discussed the *Zedner* decision (in which he was the district judge) and the Speedy Trial Act at length during this conference. Moreover, there were a number of reasons discussed in detail on the record by the parties at the conference which explain why it was impractical to try the case within seventy days.

First, there was extensive debate regarding whether, in light of the Second Circuit's ruling that certain counts in the indictment had to be severed, the government had to re-indict the case before the grand jury and obtain separate indictments. The government correctly noted at the conference that it did not need to re-indict the case, but rather, the counts could simply be severed by the court. However, defense counsel took the position that the case had to be re-indicted. In particular, counsel for defendant Shellef stated:

> It seems to me that if [the Assistant United States Attorney] is talking about if, as he put it, creating three new indictments, I think he has to go back to the grand jury, and we would not waive that.

(4/10/08 Tr. at 10.) Judge Platt stated that he believed the defense was correct, and suggested that the government schedule grand jury time. (*Id*. at 11-12.) Judge Platt also stated that he was not sure what the implication of new indictments would be on the Speedy Trial issue and asked the government to

research that issue. Specifically, with respect to the precise Speedy Trial implication once new indictments were obtained, Judge Platt told the prosecutor:

> You better take a look at the issue on retrials, if there be any requirement, I don't know. I haven't had this issue. It hasn't been raised before me. . . . I don't know what time limits there are, if any, now. There may be none, if you get a new indictment. But that's research you should do.

(*Id.* at 13.) Therefore, although Judge Platt did not make any exclusion of time (because of his belief that the case needed to be re-indicted), it was clear that both the court and defense counsel believed, albeit incorrectly, that the case was not ready to proceed to trial because of the need for the government to re-indict.

Second, in response to a question from Judge Platt regarding whether the evidence presented at the re-trial would be the same as the evidence presented previously, the government stated that "[t]here also may be some new evidence, which we could present in a different trial." (*Id.* at 14.) Clearly, the need to provide the government with time to determine what, if any, new evidence it had and whether it would present that evidence in the re-trial or in a separate trial provides an additional reason why proceeding to trial within seventy days was impractical.[8]  *See*

*United States v. Goetz*, 826 F.2d 1025, 1028 (11th Cir. 1987) (holding that extension of speedy trial clock to 180 days was warranted where, *inter alia*, there was a continuing investigation into tax code violations by the same defendants in the time period since the original indictment). Of course, if the government did decide to offer new evidence, defense counsel also would need time to investigate and prepare a defense.

Third, another reason explicitly discussed, in connection with the Speedy Trial Act, regarding why the case was not ready to be re-tried in the immediate future was the complexity of the case. At the conference, the government noted that the court had initially declared the case a complex matter and Judge Platt noted that the Second Circuit opinion on appeal could be relied to "back us up on that." (4/10/08 Tr. at 15.) However, Judge Platt added, with respect to the government's request that the case be designated complex in terms of the re-trial, "as long as the both sides agree." (*Id.*) When asked by Judge Platt for his position on that issue, counsel for Shellef agreed the case was complex:

MR. ABRAMS:    Your Honor, I think my feeling is, we should take it sort of one step at a time.

THE COURT:    I'm not telling you to do otherwise. I think you ought to plan it out so when you come to court, you are not fumbling around and saying we need the

---

[8] For example, as discussed in the Court's August 5, 2010 Memorandum and Order, the Supreme Court in 2008 clarified the elements for money laundering in a manner that imposed additional proof requirements on the government, and thus the government had to address these issues on re-trial. *See generally United States v. Santos*, 553

U.S. 507 (2008), *superseded by statute*, 18 U.S.C. § 1956(c)(9); *Cuellar v. United States*, 553 U.S. 550 (2008).

|                | time. He says he's going to ask me to classify it as a complex case. There is little doubt in my mind, given this 50-page opinion [by the Second Circuit], as to why it's a complex case that he's got good arguments in his favor, at least ab initio. |
| MR. ABRAMS:    | Maybe the only thing we'll agree on, your Honor, I think is that. It is a complex case. |

(*Id.* at 16.) Thus, by agreeing that the case was complex, defense counsel provided a third reason as to why the re-trial could not take place within the requisite seventy days.[9]

Finally, it is clear that the parties did not anticipate trying the case within the seventy-day period based upon their discussion with each other and the court regarding a proposed trial date. In particular, it is clear from the record that, prior to the April 10, 2008 conference, counsel for both

---

sides discussed a potential trial date in January 2009. At the conference, the Assistant United States Attorney advised the Court of those discussions: "We had briefly discussed a trial schedule, your Honor, nothing concretely, but we were considering sometime after the first of the year, early 2009." (*Id* at 14.) Although defense counsel did not speak to that issue, he did not object to that proposal made by the government or advise the court that the government had incorrectly stated his position. In addition, Judge Platt noted on two occasions that he would be away from mid-August to mid-September (*id.* at 14, 20) and at no time did defense counsel indicate that he would be ready for trial prior to that time frame. Therefore, although no trial date was set, the discussions between counsel, which were shared with the court, make clear that the parties did not believe they would be ready to try the case within the seventy-day period.

In short, the Court concludes that Judge Platt implicitly extended the time under Section 3161(e) from seventy days to 180 days, as he is permitted to do, because it was impractical for the case to be tried within the seventy-day period (triggered on March 4, 2008) for the reasons identified in detail on the record at the April 10, 2008 conference—namely, (1) the belief by the court and defense counsel that the government needed to re-indict the case in order to comply with the Second Circuit's mandate that certain counts be severed for purposes of re-trial; (2) the possibility that the government would present new evidence at the re-trial; (3) the parties' agreement that the case was complex; and (4) the parties' discussion with the court of a potential trial date well beyond the seventy-

---

[9] Moreover, in addition to the complexity of the case as it had originally existed, the court also indicated that there were new complexities brought to the case as a result of it being re-tried as three separate cases, thus providing an additional justification for extending the speedy trial clock to 180 days. (*See* 4/10/08 Tr. at 16 ("[The government] said both sides agreed that it's a complex case, and you can agree upon what makes it complex and whether you want a bill of particulars, whether you want some material that you don't have. There is a new approach from your standpoint with respect to trying three separate cases as opposed to one . . . .").)

day period.[10] Although it is unclear whether Judge Platt was aware of Section 3161(e) and he did not explicitly extend the applicable seventy-day period under that Section 3161 at that conference, this Court concludes, as discussed in detail below, that no explicit finding is required under the plain language of the Speedy Trial Act to extend the time under Section 3161(e). In any event, even assuming *arguendo* that an explicit finding is necessary, this Court (following re-assignment) made such a finding retrospectively on the record on November 19, 2009 (in connection with a renewed motion to dismiss on Speedy Trial grounds) for all the reasons noted above. (11/19/09 Tr. at 10-11.) Moreover, in addition to the reasons noted on the record at the April 10 conference, this Court also concludes that the re-assignment of the case on re-trial to a different judge (namely, from Judge Seybert to Judge Platt) provides an additional justification for the extension of the speedy trial clock. *See United States v. Holley*, 986 F.2d 100, 103 (5th Cir. 1993) (holding that recusal of the resident judge in the district where the case was to be tried, in combination with other logistical difficulties, including a seven-week trial on the trial judge's calendar and several vacancies on the district court in question, made re-trying the

defendant within seventy days impractical). Thus, because of the need to consider whether the case needed to be re-indicted, because of the possibility the government would offer new evidence, because of the complexity of the case, because of the proposal (without objection) to the court that the parties wished to try the case in January 2009, and because of the re-assignment of the case to a new district judge, it was impractical to conduct the re-trial within seventy days and the extension to 180-day was supported by the record.

Defendant Shellef argues that Section 3161(e) requires explicit, contemporaneous findings by the district court and that this Court cannot retrospectively make such a finding, as it did on November 19, 2009 and again in this Memorandum and Order. In support of this argument, Shellef relies upon the Supreme Court's decision in *Zedner* and Second Circuit jurisprudence that have required such contemporaneous findings, balancing the factors, for exclusions under Section 3161(h)(8)(A). However, the Court finds defendant's argument to be without merit. Shellef's statutory interpretation of Section 3161(e) — as requiring explicit, contemporaneous findings to extend from the seventy-day clock to 180-day clock — is flatly contradicted by the plain text of the applicable provision. Section 3161(e) simply and clearly states that the Court "may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical." The term "may" clearly places this decision in the Court's discretion, based upon unavailability of witnesses or other unspecified impracticalities from the passage of time. More importantly, based upon the plain language of the statute, there are

---

[10]   The minute entry on the docket sheet, which summarizes the conference, also reflects these same grounds: "The Court and parties discuss procedure following the 2nd Circuits Remand Order. The Government will seek 3 separate indictments on the case. Three separate trials will be held. The parties request a early 2009 trial date. The Court and parties discuss an excludable delay. The Court and parties agree that the case is complex, especially in light of the 2nd Circuits Opinion citing its complexity. The Government will communicate with the Court once the new indictments are filed to set up an arraignment date." (Docket No. 261.)

absolutely no requirements regarding when or how such an extension should occur. For example, the language of the statutory provision requires no explicit or contemporaneous findings on the record and no balancing of factors. Thus, the plain language certainly does not preclude an implicit finding by the Court or even a retrospective finding by the Court that such an extension was warranted. Shellef attempts, with absolutely no support from the language of Section 3161(e), to add requirements that explicit findings be made on the record regarding the extension, and that such findings cannot be made retrospectively.[11] This Court declines to invent such requirements where the plain language indicates that Congress had no such requirements in mind. Instead, the Court's duty is to enforce the plain language of the text, which allows for retrospective determinations under Section 3161(e). To hold otherwise would result in a judicial windfall for this defendant in the form of a Speedy Trial dismissal of serious criminal charges that is simply not supported by the plain and unambiguous text of this section of the Speedy Trial Act. As the Supreme Court has made clear, "the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *Camminetti v. United States*, 242 U.S. 470, 485 (1917). Courts have repeatedly and properly applied this "plain meaning" rule in the context of other Speedy Trial issues. *See, e.g.*, *United States v. Solorzano-Rivera*, 368 F.3d 1073, 1078 (9th Cir. 2004) ("The plain meaning of § 3161(h)(1)(I) is that the speedy trial clock shall be tolled while the court considers a plea agreement on a charge contained in the eventual indictment."); *United States v. O'Dell*, 154 F.3d 358, 360, 362 (6th Cir. 1998) (holding that "[t]he plain meaning of the language of [Section 3161(c)(1) of] the STA requires a not guilty plea to begin the clock running" and emphasizing "[t]he defendant's [Speedy Trial] arguments cannot overcome the plain meaning of the statutory language"); *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995) ("Under the plain language of section 3161(c)(1), unless a defendant has entered a plea of not guilty, the provisions of that section have not been triggered."); *United States v. James*, 861 F. Supp. 151, 153 (D.D.C. 1994) ("[B]ecause the statutory language [of the Speedy Trial Act] is plain, the Court finds that the Speedy Trial Act prevents the Government from delaying over one and a half years before bringing an Indictment where there is a Criminal Complaint pending.").

Although Shellef seeks to rely upon the language of the separate "ends of justice"

---

[11] In his letter requesting bail pending appeal, Shellef points to the use of the word "shall" in Section 3161(e) to support his position. *See* 18 U.S.C. § 3161(e) ("[T]he trial shall commence within seventy days from the date the action occasioning the retrial becomes final . . . ."). The Court finds that argument to be without merit. The "shall" language is immediately followed by the sentence which clearly states that the time period "may" be extended to 180 days for impracticality due to the passage of time. *See id.* ("[T]he court retrying the case may extend the period for retrial not to exceed one hundred and eighty days . . . ."). There is absolutely nothing in the mere use of the word "shall" that would justify concluding that the plain language of Section 3161(e) supports requiring an explicit, contemporaneous finding. In fact, as discussed *infra*, Congress has such plain language in Section 3161(h)(8)(A), but that language is completely absent from Section 3161(e). Thus, the word "shall" provides no support for defendant's position.

exclusion under Section 3161(h)(8)(A) to justify imposing the identical requirements under Section 3161(e), the Court finds that analysis to be fatally flawed. Section 3161(h)(8)(A), in stark contrast to Section 3161(e), contains plain and unambiguous language requiring the district court, with respect to exclusions of time in the ends of justice, to "set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). By adding this sentence to Section 3161(h)(8)(A), and only to that section, Congress was evidencing a desire to have that particular exclusion be justified by explicit and contemporaneous findings by the Court, which balanced enumerated factors. No such Congressional intent is present for Section 3161(e). Thus, Shellef's reliance on the Supreme Court's holding in *Zedner,* as well as other cases interpreting Section 3161(h)(8)(A) as requiring explicit and contemporaneous findings, is entirely misplaced. All of these cases based their decisions on the plain language of Section 3161(h)(8)(A) requiring such findings. In fact, in rejecting the government's argument that Section 3161(h)(8)(A) findings need not be contemporaneous and could be made on remand, the *Zedner* Court suggested that, but for the specific language of Section 3161(h)(8)(A) requiring findings on the record for there to be an exclusion (thus suggesting it needed to be contemporaneous), the exclusion would not need to be contemporaneous, but rather could simply be put on the record at the time a district court rules on a motion to dismiss the Speedy Trial:

The Act requires that when a district court grants an ends-of-justice continuance, it must "se[t] forth, in the record of the case, either orally or in writing, its reasons" for finding that the ends of justice are served and they outweigh other interests. 18 U.S.C. § 3161(h)(8)(A). Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance (the continuance can only be "granted . . . on the basis of [the court's] findings), the Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2). In ruling on a defendant's motion to dismiss, the court must tally the unexcluded days. This, in turn, requires identifying the excluded days. But § 3161(h)(8)(A) is explicit that "[n]o . . . period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable . . . unless the court sets forth . . . its reasons for [its] finding[s]." Thus, without on-the-record findings, there can be no exclusion under § 3161(h)(8). Here, the District Court set forth no such findings at the January 31 status conference, and § 3161(h)(8)(A) is not satisfied by the District Court's passing reference to the case's complexity in its ruling on petitioner's motion to dismiss. Therefore, the 1997 continuance is not excluded from the speedy trial clock.

*Zedner*, 547 U.S. at 506-07 (footnote

13

omitted).[12] Thus, the requirements of Section 3161(h)(8)(A) are completely inapposite to Section 3161(e), and the plain language of Section 3161(e) allows for implicit and/or retrospective extensions of the Speedy Trial clock, as long as the grounds for the extensions (*i.e.*, impracticality) are met.

To the extent that Shellef contends (notwithstanding the stark difference in the plain language) that any distinction between the requirements of Section 3161(h)(8)(A) and Section 3161(e) are inconsistent with the statutory framework and objectives of the Speedy Trial Act, the Court strongly disagrees. Any suggestion that Congress, in enacting the Speedy Trial Act, wanted to prevent district courts from making retrospective determinations under the Act is simply wrong. As an initial matter, as noted *supra*, the Act contains numerous exclusions of time which are automatic, such as the filing of a motion, and require no finding whatsoever by the district court. Thus, such exclusions require no findings and can be determined retrospectively. The rationale behind the distinction between the contemporaneous finding requirement of Section 3161(h)(8)(A) and other Speedy Trial Act sections, such as Section 3161(e), is clear. Absent specific findings, Section 3161(h)(8)(A) could be used by a court to justify an open-ended exclusion that is not linked to any particular court event or reason. In other words, without specific court findings under the "ends of justice" subsection, a court could fail to hold a trial for an undefined period of time and then, if there were insufficient automatic exclusions to comply with the Act, create "ends of justice" exclusions after the fact to justify the delay. To avoid this great loophole in the statute, it is clear why Congress would add the "findings on the record" requirement, which courts have found to require a contemporaneous finding for that particular subsection. *See United States v. Tunnessen*, 763 F.2d 74, 78 (2d Cir. 1985) (discussing the risks posed by Section 3161(h)(8)(A) in the absence of explicit, contemporaneous findings). That same concern does not exist for the automatic exclusions, which are linked to specified events, such as the filing of motions or unavailability of the defendant (events that are presumably of limited duration). Similarly, the concerns prompted by Section 3161(h)(8)(A) are likewise absent from Section 3161(e) because, unlike the "ends of justice" exclusion which has no particular limit, the Section 3161(e) extension is explicitly capped at 180 days. Therefore, although it gives the district court broad discretion to extend the date of the re-trial to 180 days and allows that determination retrospectively, no contemporaneous finding is necessary because under no circumstances could the court go beyond 180 days, unless an automatic exclusion were applicable or a contemporaneous "ends of justice" exclusion were made with explicit findings on the record. Thus, the Act provides sufficient safeguards such that Congress did not see fit to add the same language from Section 3161(h)(8)(A) to Section 3161(e).

Congress' failure to add the same language from Section 3161(h)(8)(A) to

---

[12] After suggesting that the findings under Section 3161(h)(8)(A) could be made later at the time of a motion to dismiss if the specific language regarding findings had not been included in Section 3161(h)(8)(A), the Court noted in a footnote that "[t]he best practice, of course, is for a district to put its findings on the record at or near the time when it grants the continuance." *Id*. at 507 n.7.

Section 3161(e) is clear evidence that they did not want to impose a contemporaneous finding requirement under Section 3161(e). The Supreme Court has repeatedly emphasized in analyzing questions of statutory interpretation, including in the context of the Speedy Trial Act itself, that courts should not add or modify language to statutes where, as here, it is clear from other provisions within the same statute that Congress knew how to include such language if it so wished. For example, in *Bloate v. United States*, --- U.S. ----, 130 S. Ct. 1345 (2010), the Supreme Court held that the time granted to a party to prepare a pre-trial motion in a criminal case is not automatically excluded under subsection 3161(h)(1), but rather must be excluded with a case-specific finding under the "ends of justice" exclusion. In reaching this decision, the Supreme Court explained that Congress had explicitly addressed the filing of pre-trial motions in the automatic exclusions and had failed to include the preparation time, but did reference it in the "ends of justice" exclusion, thus evidencing its intent not to have such time be the subject of an automatic exclusion:

> Had Congress wished courts to exclude pretrial motion preparation time automatically, it could have said so. As noted, subsection (h)(7) twice refers to preparation time to explain the kinds of continuances that a court may grant in the interests of justice. *See* §§ 3161(h)(7)(B)(ii), (h)(7)(B)(iv). Congress easily could have referred to preparation time similarly in subsection (h)(1). Congress did not do so, and we are bound to enforce only the language that Congress and the President enacted.

*Bloate*, 130 S. Ct. at 1356 n.13 (additional citation omitted); *see also id.* at 1353 (noting the limitation in the language of 3161(h)(1)(F) which only references the filing of the motion for the automatic exclusion, and not the preparation time, and emphasizing that "[t]his limitation is significant because Congress knew how to define the boundaries of an enumerated exclusion broadly when it so desired," such as in Section 3161(h)(1)(A) regarding mental competency and physical capacity of the defendant); *cf. O&G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 161 (2d Cir. 2008) ("[I]f Congress intended [49 U.S.C.] § 28103(b) to apply only to passenger claims, it would have included such qualifying language in the definition of the term 'claims.' Congress did not do so. . . . Because the language is unambiguous on this point, we cannot supply that which is omitted by the legislature." (footnotes, citations, and quotation marks omitted)); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 134 (2d Cir. 2008) ("If Congress had meant to assign direct liability to both the person who actually commits a copyright-infringing act and any person who actively induces that infringement, the Patent Act tells us that it knew how to draft a statute that would have this effect.").

As in *Bloate*, this Court should not add a requirement of an explicit, contemporaneous finding under Section 3161(e) where it is clear, both from the plain language of that subsection, as well as the Act as a whole, that Congress could have included such a requirement (and knew how to) if that was Congress's intent. This Court is "bound to enforce only the language that Congress and the President enacted." *Bloate,* 130 S. Ct. at 1356 n.13. Moreover, given the 180-day limitation, this Court's interpretation does not create a situation where Section 3161(e) could

swallow other rules within the Act, such as the "ends of justice" exclusion. Thus, allowing a retrospective finding under Section 3161(e) does not undermine the purpose or integrity of the Speedy Trial Act.

Although no circuit court has decided this precise issue, this Court's conclusion is consistent with another district court decision in *United States v. Ginyard*, 572 F. Supp. 2d 30 (D.D.C. 2008). In *Ginyard*, the court held that the Speedy Trial clock can be extended retrospectively under Section 3161(e) to 180 days, relying upon the same grounds as this Court. First, the court noted the explicit language in the "ends of justice" exclusion under Section 3161(h)(8)(A) requiring a contemporaneous judicial finding and concluded that "[t]he absence of parallel language in Section 3161(e) strongly suggests that Congress did not intend to prevent the granting of Section 3161(e) continuances after the initial seventy-day period for trial had passed." *Id.* at 35. Second, the court explained that the potential abuses prompting Congress to have such a requirement under Section 3161(h)(8)(A) are not present under Section 3161(e):

> Section 3161(e), by contrast [to Section 3161(h)(8)(A)], does not require a balancing of different factors, but instead turns on whether trial within the seventy-day period is impractical. Such a determination need not occur prior to expiration of the initial seventy-day period. The factors suggesting the impracticality of trial within a particular period of time are fixed, and will not change with the passage of time. There is thus little danger that a court may use Section 3161(h) [sic] without justification to retroactively cure (and

rationalize away) violations of the Act. Indeed, there is no meaningful reason to distinguish between a finding on the sixty-ninth day of the speedy trial clock that trial is impractical and the same finding made on the seventy-first day. To hold otherwise would needlessly exalt form over substance and would have no basis in the statutory text itself.

*Id.* at 36. Although not binding, this Court, for all the reasons discussed above, finds the thorough and well-reasoned analysis in *Ginyard* to be persuasive.

Accordingly, the Court holds that Section 3161(e) does not require explicit and contemporaneous findings in order to extend the Speedy Trial clock from seventy days to 180 days; rather, in its discretion, this Court can find, and does find, retrospectively that such an extension was warranted given the impracticalities due to the passage of time, including determining whether the government had to re-indict the case after remand, determining whether the government would present new evidence at the re-trial, the complexity of the case, the re-assignment of the case to a new district judge, and the belief of counsel that they would not be ready to try the case until January 2009.

## B. The 180-Day Clock Had Not Expired by November 4, 2008

Having found that the extension to the 180-day clock under Section 3161(e) was warranted, the Court must determine whether the Speedy Trial clock expired, or whether there were sufficient automatic exclusions to toll the clock within the 180 days. As noted by Shellef's counsel, the clock began to run with the issuance of the Second Circuit's mandate for a re-trial on March 4, 2008. Given that

triggering date, a total of 246 days elapsed at the time of Shellef's Speedy Trial motion and, thus, there would need to be 66 days of excludable delay to be in compliance with the 180-day clock. As set forth below, the Court concludes that there were well over 66 days of automatic exclusions of time within the applicable time-period and, thus, the Speedy Trial Clock did not expire.

First, on March 28, 2008, defendant Shellef filed a bail modification motion. On April 1, 2008, Judge Platt denied that motion. Therefore, the time from the filing of the motion until the Court's decision—that is, 5 days—is automatically excludable under Section 3161(h)(1)(F).

Second, on June 3, 2008, defendant Shellef filed a pre-trial motion to dismiss the Indictment for violation of the Speedy Trial Act. (Docket No. 269.) On June 13, 2008, the government filed its opposition to that motion. On June 18, 2008, Shellef filed his reply. On July 24, 2008, Judge Platt issued an Order denying the defendant's motion. Thus, the time from the filing of the motion until the Court's decision—that is, 52 days—is automatically excludable under Section 3161(h)(1)(F).

Third, on May 19, 2008, the government submitted a letter motion to the court stating: (1) that it disagreed with the position of the court and defense counsel expressed at the April 10th conference that the government needed to re-indict the case to comply with the Second Circuit's mandate requiring severance of the charges; and (2) requesting that the court set three new trial dates for the severed charges. (Docket No. 265.) Defendant Shellef never responded to that motion in any way. On May 27, 2008, Judge Platt requested that the government

submit redacted copies of the original Indictment to show how a re-trial could proceed consistent with the Second Circuit's mandate. (Docket No. 266.) On July 22, 2008, in response to the court's request, the government submitted a letter to the court, which attached redacted indictments, with the counts severed to comply with the Second Circuit's mandate. Although it was apparent from Judge Platt's request that he was still considering the government's position that they did not need to re-indict the case and could proceed immediately to trial, defendant Shellef again submitted no opposition of any kind to the government's continuing motion. On July 24, 2008, in rejecting the defendant's Speedy Trial motion, Judge Platt clearly continued to have the view, notwithstanding the government's pending motion, that the government needed to re-submit the case to the grand jury:

> The fact is that the government unquestionably needs time to determine how best to try two separate defendants for their specific offenses which, in light of the Court of Appeals finding of misjoinder, necessarily means that the defendants are not currently facing any charges. Accordingly, any accusations of speedy trial violations would logically appear to be premature. If, as and when one or more of the indictments is returned, this Court will entertain Speedy Trial Act motions.

July 24, 2008 Mem. and Order at 8. Viewing this as an implicit rejection of the government's motion which took the position that it did not have to re-indict and sought a trial date, July 24 would be the date on which the court reached a disposition on the government's motion. Thus, the time from the filing of the motion by the government on May

19, 2008 until the court's decision on July 24, 2008 is automatically excludable under Section 3161(h)(1)(F). However, because that time frame overlapped with the defendant's filing of the Speed Trial motion, it only results in 15 additional excluded days (from the government's filing of its letter motion on May 19, 2008 until the defendant's filing of his Speedy Trial motion on June 3, 2008).

Although the defendant argues that this time should not be excluded because it was simply a request to set a trial date, the Court disagrees with that characterization and finds that the government's May 19, 2008 letter properly qualifies as a motion under Section 3161(h)(1)(F). In particular, in addition to requesting a trial date, the letter was attempting to address an extremely important and substantive legal issue that had been left open at the April 10th conference and that the government had requested an opportunity to brief—namely, the position of the defendant and Judge Platt at the April 10th conference that the government could not seek a trial date, but rather had to re-indict the case first in order to sever the counts consistent with the Second Circuit's mandate. For example, the government's letter had a section in the May 19 Letter entitled "Government May Proceed on Original Indictment," in which the government cited applicable legal authority and argued that "[t]he Second Circuit Court of Appeals has routinely held that a new trial may go forward on the original indictment, including those instances in which a count in a multi-count indictment is dismissed but the remaining counts are still valid." (Docket No. 265.) Thus, this was a substantive motion addressing specific legal issues regarding whether the government was in a position to proceed to re-try the case without re-submitting the case to the grand jury. Although defendants never responded

to that motion, it is nevertheless a motion under Section 3161(h)(1)(F). This Court's ruling is consistent with *United States v. Green*, 508 F.3d 195 (5th Cir. 2007), in which the Fifth Circuit held:

> Consistent with the weight and reasoning of the persuasive authority from our sister circuits, and the Supreme Court's decision in *Henderson*, we hold that under 18 U.S.C. § 3161(h)(1)(F), any pretrial motion, including a motion to set a trial date, tolls the speedy trial clock automatically, and the Government is not required to prove that the motion actually delayed the trial.

*Id*. at 200; *accord United States v. Olderbak*, 961 F.2d 756, 761 (8th Cir. 1992).[13] Finally, to the extent any suggestion is made that Judge

---

[13] The Court recognizes that the Eleventh Circuit has held that a simple request for a trial date does not qualify as a motion under Section 3161(h)(1)(F). *See United States v. Brown*, 285 F.3d 959, 962 (11th Cir. 2002) ("[W]e find that a document that does nothing more than remind the court that it must set a case for trial under the terms of the Speedy Trial Act is not a motion within the meaning of 18 U.S.C. § 3161(h)(1)(F), resulting in time excluded from that set forth in 18 U.S.C. § 3161(c)."). However, *Brown* is clearly distinguishable from the instant case. In *Brown*, the Eleventh Circuit's decision was based upon the fact that it was not a substantive motion, but rather simply, pursuant to the local rule, "a reminder to the court to set a timely trial date." *Id*. at 961. In the instant case, as noted above, the government's motion was much more than a reminder; instead, it was a substantive motion that explained to the court and opposing counsel why the government was not required under the law to re-indict the case prior to the re-trial. Thus, this substantive motion for a trial date unquestionably qualifies under Section 3161(h)(1)(F).

Platt took too long to decide the government's motion, this Court notes that the defendant never responded to the government's motion and, thus, Judge Platt had no way of knowing whether the government's motion (and the caselaw cited therein) had persuaded the defendant that re-indictment was not required. A similar situation arose in *United States v. Bufalino*, 683 F.2d 639, 645-46 (2d Cir. 1982), in which the government made a sequestration motion to which the defendants never responded. In determining that the over six-month period while the government's unopposed motion was pending was automatically excludable under Section 3161(h)(1)(F), the Second Circuit explained that, because the defendants never responded to the government's motion, "[the district judge] could not have taken this motion under advisement in any meaningful way until the defendants made their positions known." *Id.* at 645. The Second Circuit further noted, "[i]t seems to us that [defendant], when faced with a government motion, had a duty to do more than stand by without taking a position and then reap the benefit of inaction by having the indictment dismissed on speedy trial grounds." *Id.* at 646. In any event, in the instant case, any issues regarding the length of delay in deciding the government's motion is eliminated by the fact that (as noted above), the defendant filed a Speedy Trial motion on June 3, 2008, only 15 days after the government's motion and then the remaining time until July 24, 2008 is excludable not only because of the government's motion, but also because of the defendant's motion.[14]

---

[14] The government, relying on the Second Circuit in *Bufalino*, argues that the entire time from July 22, 2008 until October 29, 2008 should be automatically excluded because of their pending motion for a trial date based upon the government's legal position that re-indictment was

unnecessary, which was made on May 19, 2008 and renewed on July 22, 2008, and never responded to by the defendant. Although the Court has utilized the July 24, 2008 Memorandum and Order as an implicit rejection of the government's motion, there is evidence that Judge Platt was still considering the issue (without the benefit of a response from the defendant), up until the November 6, 2008 status conference, when Judge Platt set a trial date. At the November 6, 2008 conference, Judge Platt for the first time explicitly addressed the government's motion and granted the government's request to proceed without re-indictment, which is the correct approach as a matter of law. In fact, given the defendant's clear (albeit erroneous) position at the April 10 conference that such re-indictment was required, Judge Platt also construed defendant Shellef as having orally moved for re-indictment, independent of the government's motion for a trial date. *See* 11/6/08 Tr. at 4 ("I'm assuming *arguendo* at the moment that I'm going to deny the application of the defendants that they haven't been – that they did not have to be re-presented to another grand jury because the government says they're [*i.e.*, the counts] are exactly the same."); *see also id.* at 5 ("Now, I said I have not examined to find out that these [*i.e.*, separate indictments] are nothing but duplicates or what went on before. But assuming that they are, and assuming that I'm going to find that there's no change in any of the charges were before only broken out into different and separate indictments and counts, I'm inclined to agree with the government. As long as they haven't varied any substance of any of the charges, there's no need to re-present the case to the grand jury."). Having determined for the first time that there was no need to re-present the case to the grand jury, Judge Platt set an immediate trial date, which defense counsel subsequently requested be adjourned. However, this Court need not decide whether November 6, 2008 is the proper end date for the government's motion for a trial (or for an oral motion by defendant on April 10 that the government re-indict the case) because, even construing the record most favorably to the defendant and finding that the July 24, 2008

Fourth, because of the conference on April 10, that day is also automatically excluded. *See United States v. Lucky*, 569 F.3d 101, 107 (2d Cir. 2009) (noting that "a status conference is manifestly a 'proceeding' which, while not listed in the nonexclusive examples contained in 18 U.S.C. § 3161(h)(1), is very similar to the examples given in that section" and, thus, is automatically excludable).

Therefore, these four automatic exclusions—the defendant's bail motion, the defendant's Speedy Trial motion, the government's motion for a trial date, and the April 10 conference—result in the exclusion of 73 days, which is more than the 66 excludable days necessary to bring the case within the 180-day clock. In other words, of the 246 days that elapsed, there were a total of 173 non-excludable days between the Second Circuit's issuance of the mandate on March 4, 2008 and November 4, 2008: (a) March 4 - 27, 2008 (24 days); (b) April 2 - 9, 2008 (8 days); (c) April 11 - May 18 2008 (38 days); and (d) July 25 - November 4 2008 (103 days). Accordingly, the 180-day clock under Section 3161(e) did not expire and no Speedy Trial Act violation occurred with respect to the defendant's re-trial.

\* \* \*

In sum, the Court concludes that Judge Platt, by his rulings, implicitly extended the seventy-day Speedy Trial clock under Section 3161(e) to 180-days because of the

---

Memorandum and Order was an implicit rejection of the government's motion (and adoption of defendant's April 10 request for re-indictment), the Speedy Trial clock has not run for the reasons discussed above.

impracticalities he noted on the record. In any event, to the extent that Judge Platt did not do so explicitly, the undersigned explicitly and retrospectively makes such an extension in its discretion, as permitted by the plain language of Section 3161(e), based upon my explicit findings (consistent with Judge Platt) that it was impractical to try the case within the seventy-day period for the reasons set forth on the record and herein by both Judge Platt and the undersigned, and that the full 180-day period was warranted. Once the 180-day period is utilized, and automatic exclusions take into consideration, it is clear that no Speedy Trial violation occurred because the 180-day clock did not expire.[15]

---

[15] The government also argues, in the alternative, that defendant Shellef should be judicially estopped from asserting the Speedy Trial violation during the relevant time period because it is inconsistent with Shellef's erroneous legal position before Judge Platt (which Judge Platt adopted) that the case needed to be re-indicted before it could proceed to re-trial. (Government's Opp. Mem. at 20-25.) The government notes that the Supreme Court suggested in *Zedner* that judicial estoppel could apply to Speedy Trial claims, although the Court concluded it was not warranted under the facts of that case. Specifically, in the instant case, the government argues that Shellef's position now is clearly contrary to the position he took before Judge Platt during the period he now claims the Speedy Trial clock was running. In particular, at the initial April 10 conference, the Speedy Trial clock issue was discussed in detail, and defense counsel took the erroneous legal position that, because of the Second Circuit's determination that counts had been improperly joined, the case had to be re-indicted before the government could re-try the case: "It seems to me that if [the Assistant United States Attorney] is talking about if, as he put it, creating three new indictments, I think he has to go back to the grand jury, and we would not waive that." (4/10/08 Tr. at 10.) Judge Platt stated that he believed the defense was correct, and

suggested that the government schedule grand jury time. (*Id.* at 11-12.) If defense counsel's legal position at that conference (with which Judge Platt agreed) was correct, the seventy-day Speedy Trial clock would not have begin to run at the time of the April 10 conference (because the indictment would have been invalid at that point), but rather would have commenced at the time of the valid Superseding Indictment. *See, e.g.*, *United States v. Dennis*, 625 F.2d 782, 793 (8th Cir. 1980) ("Where the first indictment is dismissed at the defendant's request, the time limitation begins to run anew with reindictment."); *accord United States v. Hutchins*, 818 F.2d 322, 325-26 (5th Cir. 1987) ; *United States v. May,* 771 F.2d 980, 982-83 (6th Cir. 1985); *United States v. Puett*, 735 F.2d 1331, 1333-34 (11th Cir. 1984); *United States v. Samples*, 713 F.2d 298, 302-03 (7th Cir. 1983); *United States v. Thomas*, 705 F.2d 709, 710-11 (4th Cir. 1983); *United States v. Bittle*, 699 F.2d 1201, 1205 (D.C. Cir. 1983). The government also argues that defendant Shelleff succeeded in persuading Judge Platt to accept his position (up until November 2008) that the pending indictment was a nullity on remand and needed re-indictment. *See* July 24, 2008 Mem. and Order at 8 ("The fact is that the government unquestionably needs time to determine how best to try two separate defendants for their specific offenses which, *in light of the Court of Appeals finding of misjoinder, necessarily means that the defendants are not currently facing any charges*. Accordingly, any accusations of speedy trial violations would logically appear to be premature. If, as and when one or more of the indictments is returned, this Court will entertain Speedy Trial Act motions." (emphasis added)). Thus, the government contends that the defendant, having taken the position that the pending indictment was a nullity by virtue of the Second Circuit's decision and needed to be re-indicted, the defendant should not now be able to unfairly benefit by changing his position to argue that it was not a nullity, but rather that the Speedy Trial clock was ticking all along. However, this Court need not address this alternative argument by the government because it has found that no Speedy Trial violation

## IV. CONCLUSION

For the reasons set forth above and orally on the record in Court, the defendant's motion to dismiss the Indictment on Speedy Trial grounds is denied.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: January 14, 2011
Central Islip, New York

\* \* \*

The attorneys for the Government are James B. Nelson and Mark W. Kotila, United States Department of Justice, 601 D St. NW, Washington, DC 20004. The attorneys for the defendant are Henry E. Mazurek, Weinstein & Mazurek PLLC, 521 Fifth Ave., Suite 3300, New York, NY 10175, and Jane Anne Murray, Law Office of Jane Anne Murray, Woolworth Building, 233 Broadway, 22nd Floor, New York, NY 10279.

occurred.